**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

**JEREMY WASHINGTON,**

                **Plaintiff,**

      **v.**

**MICHAEL CONLEY, ET AL.,**

                **Defendants.**

**Civil Case No. 20-cv-50390**

**Hon. Iain D. Johnston**
**Hon. Michael F. Iasparro**

**PLAINTIFF JEREMY WASHINGTON'S OPPOSITION TO DEFENDANTS'**
**JOINT MOTION FOR LEAVE TO ASSERT NEW AFFIRMATIVE DEFENSES**

For the reasons set forth herein, Plaintiff Jeremy Washington, through counsel, submits this Opposition[1] to (1) the Motion of Defendants Katherine Emmons, Colton Love, Christopher Wheeler, and Brent Porter ("Additional Defendants") for Leave to File Answer and Affirmative Defenses (the "Motion for Leave"), and (2) the Motion of Defendants Jordan Black, Michael Conley, Kassandra Marinelli, Danny Martinez, Sr., Luke Papke, and Benjamin Schossler ("Original Defendants") to Adopt such Answer and Defenses (the "Motion to Adopt").[2]

## INTRODUCTION

Defendants request leave to amend their pleading to add affirmative defenses they could have included from the start—five years ago when Mr. Washington filed this case in 2020, Mot. ¶ 5. And Additional Defendants seek leave to answer Mr. Washington's Second Amended Complaint ("SAC"), which they have failed to do since the November 28, 2024 deadline. Additional Defendants do not explain why they should be permitted to file their belated answer and make no showing of good cause. And Original Defendants are attempting to join Additional Defendants' late pleading to get in new affirmative defenses after the close of fact discovery. But it is simply too late, and none of the Defendants offer any justification for missing the Court's deadlines and failing to timely plead their affirmative defenses. The Motion should be denied.

Defendants seek to inject into the case "certain affirmative defenses, including the one recognized in *Heck v. Humphrey*, 512 U.S. 477 (1994)," that they also admit "were not previously raised by the original Defendants." Mot. ¶ 2. Accordingly, Plaintiff respectfully requests that this Court exercise its discretion to deny both the Motion for Leave and the Motion to Adopt, maintain

---

[1] Mr. Washington does not oppose Defendant Colton Love's request for a stay of proceedings under the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, *et seq.*
[2] As used herein, "Mot." shall refer to cited portions of the joint Motion for Leave and Motion to Adopt, and "Defendants" shall refer collectively to both Original and Additional Defendants. All emphases are added unless otherwise noted.

the pleadings' status quo as to the Original Defendants, and enter an appropriate order directing the Clerk to enter a default judgment against the Additional Defendants pursuant to Fed. R. Civ. P. 55(a).

On January 23, 2020, Mr. Washington experienced profound violations of his constitutional rights while an inmate at Dixon Correctional Center. Specifically, Dixon staff—employees of the Illinois Department of Corrections ("IDOC")— withheld from Mr. Washington his prescribed psychotropic medication, triggering an acute mental health episode. And documents from IDOC's productions have *confirmed* that Mr. Washington never those medications that day. Defendants reacted to Mr. Washington's mental health crisis, not with the de-escalation measures that IDOC policy requires, but with unconstitutionally excessive force followed by further withholding of crucial medical treatment. Mr. Washington's case has languished in discovery for years as attorney after attorney for Defendants has delayed the completion of fact discovery until it finally closed on April 17.

Defendants, now represented by their fifth different attorney in the same number of years, after the close of discovery and on the eve of summary judgment, seek leave to pursue new affirmative defenses. But Defendants do so without good cause (or even any serious explanation) for their prior failure to raise such defenses, or in the case of Additional Defendants, to answer the SAC at all, despite numerous reminders and requests from Mr. Washington's counsel that they do so. It is simply too late for pleadings-stage motion practice; Mr. Washington has waited long enough. As the Seventh Circuit has observed: "Delays are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution." *Geiserman v. MacDonald*, 893 F.2d

787, 791 (7th Cir. 1990). The delays are the fault of Defendants, not Mr. Washington. And Defendants' unjustified delays in this case warrant sanction, not reward.[3]

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

After enduring the unconstitutional January 23, 2020 cell extraction at Dixon, Mr. Washington exhausted available administrative remedies and submitted his initial complaint on October 8, 2020, naming the Original Defendants. Dkt. 1. The Court recruited the undersigned counsel to represent Mr. Washington *pro bono* on August 17, 2021, Dkt. 52, and based on further investigation of counsel and review of IDOC's initial productions, Mr. Washington filed his Amended Complaint against Original Defendants with the Court's leave on May 13, 2022, Dkt. 73. Original Defendants answered that Amended Complaint on June 8, 2022. Dkt. 77. The parties proceeded with depositions and document productions despite significant delays caused by turnover with Defendants' counsel and Defendants' persistent foot-dragging in responding to Mr. Washington's discovery requests, necessitating more than a dozen extensions of the fact discovery deadline. When Mr. Washington learned additional factual details supporting the addition of claims and parties, Mr. Washington seasonably moved for leave to file his SAC on August 25, 2023. Dkt. 99. In its November 17, 2023, Order permitting Mr. Washington to file his SAC, which named the Additional Defendants and asserted additional claims against Original Defendants, this Court recognized: "it was not until [Original] Defendants were deposed in April 2023 and subsequent documents were produced by Defendants that Plaintiff understood the role of the proposed [Additional] [D]efendants in Plaintiff's claims." Dkt. 107 at 3. Mr. Washington filed his SAC on November 27, 2023. Dkt. 108.

---

[3] To the extent it would be helpful to the Court, Mr. Washington respectfully requests oral argument on Defendants' Motion.

Original Defendants—by then represented by current defense counsel's immediate predecessor who, on information and belief, was under current defense counsel's supervision while handling this case—answered the SAC on January 11, 2024. Dkt. 115. That same day, Original Defendants moved to strike that initial answer, which motion was granted, and Original Defendants filed their amended answer to the SAC on January 12. Dkt. 118. In that amended answer, they asserted qualified immunity and exhaustion defenses, but no defense based on *Heck v. Humphrey. Id.* at 31. At Additional Defendants' request for an extension to respond to the SAC, this Court set a deadline of July 12, 2024. Dkt. 135. Additional Defendants blew that deadline, prompting Mr. Washington's counsel to inquire of defense counsel numerous times as to when their answer or other response might be forthcoming. Ultimately, the Court entered an order on July 19, 2024, observing that "Defendants Emmons, Love, Porter, and Wheeler's responsive pleading was due 07/12/24 [135], but no responsive pleading was filed by that deadline. Similarly, in the 07/15/24 joint status report, Defendants represented that their responsive pleading would be filed by 07/16/24, but no responsive pleading was filed," and instructing that "Defendants have until 07/26/24 to file their responsive pleading." Dkt. 138.

On July 25, Additional Defendants moved to dismiss the SAC. Dkt. 139. On November 14, the Court denied Additional Defendants' motion to dismiss. Dkt. 150. Defendants' counsel withdrew on February 24, 2025—more than three months later—without ever answering the SAC on behalf of Additional Defendants, despite the November 28 due date imposed by Rule 12(a)(4)(A), and numerous reminders to do so. Current counsel substituted as counsel of record for all Defendants on February 24, then raised his clients' failure to answer the SAC (and his intention to file the instant Joint Motion) with Mr. Washington's counsel one month later, on March 21.

## ARGUMENT

With the instant Joint Motion, Additional Defendants seek to wind back the clock so that they can answer Mr. Washington's SAC and introduce new affirmative defenses after the close of fact discovery. But Additional Defendants' Motion for Leave should be denied because they fail to make the required showing of excusable neglect. Further, by seeking to join that proposed SAC via their Motion to Adopt, the Original Defendants seek to improperly amend *their* pleading— which they have already done once as of right—and shoehorn in new defenses, also after the close of fact discovery. But the Additional Defendants have failed to show excusable neglect supporting why they should be afforded the opportunity to answer the SAC now, and Original Defendants have failed to show good cause supporting their desire to amend their answer, and should not be permitted to capitalize on Additional Defendants' failure to timely answer to get another opportunity to answer the SAC. Moreover, because the *Heck v. Humphrey* affirmative defense is inapplicable as a matter of law as Mr. Washington does not with this suit challenge the length or validity of his sentence, granting Defendants' joint motion would be futile. Accordingly, the Joint Motion should be denied for both independently dispositive reasons.

## I.  THE MOTION FOR LEAVE SHOULD BE DENIED BECAUSE ADDITIONAL DEFENDANTS HAVE NOT DEMONSTRATED EXCUSABLE NEGLECT.

Because Additional Defendants never answered the SAC within the "specified time" imposed by Rule 12(a)(4)(A)—two weeks following the denial of their motion to dismiss—they must show excusable neglect to secure the retroactive extension they seek. *See* Rule 6(b)(1)(B). In assessing whether to excuse a party's neglect, Courts consider: the danger of prejudice to the non-movant, the length of delay and its potential impact on the proceedings, the cause of the delay, including whether the cause was within the control of the movant, and whether the movant acted in good faith. *Brown v. Kelly Servs., Inc.*, 2018 WL 351688, at *2 (N.D. Ill. Jan. 10, 2018).

### a. Defendants Are Solely Responsible for the Delay.

Defendants' proposed responsive pleading comes nearly five full months after it was due to the Court, and Mr. Washington played no part in this substantial delay. The reason for the delay in filing is the most important factor to consider in assessing whether the Motion for Leave should be granted. *See Knapp v. Evgeros, Inc.*, 205 F. Supp. 3d 946, 951 (N.D. Ill. 2016).

Additional Defendants have had notice of Mr. Washington's claims against them since the SAC was filed in November 2023 (Dkt. 109), but for reasons they have yet to articulate, they have not answered. In a Minute Entry on July 19, 2024, the Court acknowledged the Additional Defendants had missed their July 12, 2024 deadline to file a pleading responsive to the SAC. Dkt. #138. Despite the delinquency, the court gave the Additional Defendants until July 26 to file a response, and on July 25, 2024, all of the Defendants together filed a Motion to Dismiss. Dkt. #139. On November 14, 2024, the Court denied their Motion to Dismiss. Dkt. 150. Pursuant to Fed. R. Civ. P. 12(a)(4)(A), the additional Defendants had 14 days from the denial of their Motion to Dismiss—or until November 28, 2024—to file their Answer to the SAC. Not only did Defendants fail to timely file their responsive pleading; they failed to move for an extension or acknowledge the Court's November 14 Order in any way.

The Motion for Leave contains no explanation for the nearly five-month delay, nor does it account for the failure to request an extension. "[I]f the moving party fails to demonstrate genuine ambiguity or confusion about the scope or application of the rules or some other good reason for missing the deadline, she cannot establish excusable neglect, regardless of how short the delay was or how little it prejudiced the opposing party." *Knapp*, 205 F. Supp. 3d at 951 (cleaned up); *see also Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020) (holding that movant's "failure to explain counsel's oversight is fatal, for plain neglect is not "excusable neglect" as Rule 6(b)(1)(B)

requires."). In their Motion for Leave, Defendants note they "identif[ied]—without prompting from Mr. Washington—that no responsive pleading was on file." Mot. ¶ 13. For his part, Mr. Washington has met all of the required filing deadlines in this matter and is under no obligation to remind the opposing party of theirs. As Mr. Washington has had no role in the delay, this factor does not aid Defendants in their neglect.

**b. Granting Defendants' Joint Motion Would Result in Further Delay.**

Mr. Washington has been diligently pursuing his claims against Defendants—most of the time while incarcerated—for nearly four and a half years. Defendants have been on notice as to their available defenses since the filing of the SAC more than a year and a half ago. Allowing them to answer the complaint now, *months* after the deadline has passed, would cause even further delay. Defendants state they do not seek an extension of discovery or alteration of current scheduling deadlines (Mot. ¶ 15) but allowing them to file a new Answer and Affirmative Defenses at this stage would necessitate exactly that. Permitting Defendants to answer now would also necessitate Mr. Washington returning to square one in terms of preparing his case in light of Defendants' newly introduced affirmative defenses, and seeking the appropriate discovery necessary to address those defenses. Affirmative defenses "serve as a platform for discovery" which is why they are required at the pleading stage. *Top Tobacco, L.P. v. Good Times USA, LLC*, No. 14-CV-8978, 2017 WL 395698, at *4 (N.D. Ill. Jan. 30, 2017). Should Defendants be permitted to assert affirmative defenses at this juncture, justice requires Mr. Washington be allowed to conduct further discovery, resulting in further costs and delays. *See United States ex rel. Patzer v. Sikorsky Aircraft Corp.*, 382 F. Supp. 3d 860, 865 (E.D. Wis. 2019) ("a plaintiff confronted with an affirmative defense may always use discovery to learn the factual and legal basis for the defense before having to formally respond to it.").

The same principle applies to Defendants' purported "clarification" of facts. Mot. ¶ 7(c). Now that discovery has concluded and all Defendants have been deposed, they claim to have clarifying information. For example, the original answer claimed Defendants had no knowledge of whether Defendant Black intentionally hit Mr. Washington in the face and genitals with pepper spray and/or pepper balls. Defendants now wish to deny that allegation completely. Mot. ¶ 7(c)(iii). Defendants originally claimed "lack of knowledge" to numerous allegations in the Complaint, and now—with every party's deposition testimony on the record—desire the ability to go back and clarify what they do or do not know. Mot. ¶ 7(c). Defendants' knowledge as to the events of January 23, 2020 has not changed since their Motion to Dismiss was denied in November 2024, except that Defendants have elaborated on their recollection of Mr. Washington's violent cell extraction in their depositions. Had they wished to "clarify" their perspective of the events at the center of this litigation, they had ample opportunity to do so before the deadline for responsive pleadings had passed. Again, if Defendants are permitted to update their recollection of the facts at this stage, Mr. Washington would necessarily be entitled to additional discovery, causing *additional* undue delay. Accordingly, this factor weighs against granting the Motion for Leave.

### c. Mr. Washington Will be Prejudiced by the Delay.

Mr. Washington will suffer prejudice if Defendants' motion is granted, and they are permitted to file an untimely answer. Defendants claim there is no prejudice to Mr. Washington by allowing them to answer because Mr. Washington "has long been aware that all Defendants uniformly deny wrongdoing and that the disciplinary proceedings resulting in the loss of good-conduct credit is something he is barred from disputing pursuant to Supreme Court precedent." Mot. ¶ 8. However, Defendants cite no authority to support these assertions, and courts have routinely recognized the contrary. *See Brinson v. Wexford Health Sources, Inc.*, No. 12 C 50080,

2014 WL 1652087, at *2 (N.D. Ill. Apr. 23, 2014) ([A] plaintiff is under no duty to anticipate affirmative defenses…and thus may not have pled all of the facts necessary to establish one of the many exceptions to the defense."); *see also MCI Telecommunications Corp. v. Ameri-Tel, Inc.*, 852 F. Supp. 659, 666 (N.D. Ill. 1994) (noting the Federal Rules require affirmative defenses be raised in response to a preceding pleading).

Indeed, granting Defendants' Motion for Leave would necessitate additional discovery, including re-deposing certain witnesses.  In denying a motion to amend pleadings, the District Court for the Southern District of Illinois noted the non-moving party would be prejudiced by an order granting the motion "because they [would] be required to go through the expense of re-deposing plaintiff and undergoing additional rounds of written discovery and depositions." *Pendgraft v. Butilaid, et al.*, No. 3:15-CV-816-NJR-DGW, 2017 WL 11920846, at *1 (S.D. Ill. Mar. 8, 2017).  The court also noted granting leave to amend would delay the resolution of the matter.  *Id*.  The same unjust and unnecessary consequence would result from an order granting Defendants' present Motion.   Mr. Washington should have been aware of these factual "clarifications" and proposed defenses before taking Defendants' depositions. *See Knapp v. Evgeros, Inc.*, 205 F. Supp. 3d 946, 952 (N.D. Ill. 2016).  Because he was not, Mr. Washington would be forced to incur the additional expense and delay of re-deposing some, if not all of the Defendants.

Even if the Court disagrees with the above and finds that Mr. Washington is at *no* risk of prejudice at all, Defendants' lack of explanation is inexcusable and necessitates the denial of their Motion for Leave. *See Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020) ("Lack of prejudice to the non-movant is often used as a reason to excuse neglect, but even if we assume that [the non-moving party] suffered no prejudice, it will not suffice if no excuse at all is offered or if the excuse

is so threadbare as to make the neglect inexplicable.") (cleaned up). Defendants' do not even attempt to justify their failure to answer the SAC, and the Motion for Leave should be denied.

> **d. Defendants Have Not Acted in Good Faith in their Failure to Abide by their Discovery Obligations, Creating Inexcusable Delays.**

This litigation has been delayed *repeatedly* due to inattention on the part of Defendants, drawing out the relief Mr. Washington has now been seeking for more than four years. Defendants have serially failed to meet the Court's deadlines in this matter, and Mr. Washington has suffered as result. For example, during Mr. Washington's deposition of Defendant Michael Conley on April 25, 2023, Mr. Conley admitted to the existence of text communications with certain co-defendants. While Defendants should have affirmatively collected and produced those documents *ab initio*, and long before any depositions, undersigned counsel requested production of any such documents. *See* Conley Dep. Tr. 17:4-12. And Mr. Washington pressed for such documents subsequently. Not until two years later—in April 2025—did Mr. Washingtons receive communication from Defendants' counsel that Defendant Conley's testimony that he "still ha[s] those text message," was "mistaken," that "the messages are not in [Conley's] possession," and that "there are no responsive documents in Defendants' possession to be produced." Joint Status Report, Dkt. 167. Then, in an about-face one week later, on April 24, counsel for Defendants contacted Mr. Washington's counsel and advised that such documents *did* exist and that predecessor defense counsel had possession of these highly responsive and relevant text messages since *May 12, 2023*, nearly two years ago, but never produced them.

Likewise, Mr. Washington served Defendants with his Fourth Set of Requests for Production on August 19, 2024, and only received the personnel files of Defendants Emmons, Porter, and Wheeler on March 5, 2025. Mr. Washington only received Defendant Love's personnel file on April 9, 2025, after repeated urging of Defendants to produce the requested

documents. Joint Status Report, Dkt. 160. Blown deadlines, combined with the lack of any real explanation or legal justification for failing to timely file or produce documents are inconsistent with meeting discovery obligations in good faith and so this factor weighs heavily against granting Defendants' Joint Motion. *Knapp*, 205 F. Supp. 3d at 952; *see also Sebesta v. Davis*, No. 12 C 7834, 2016 WL 232380, at *3 (N.D. Ill. Jan. 20, 2016), aff'd, 878 F.3d 226 (7th Cir. 2017) (holding that repeated tardiness and delays demonstrated a lack of good faith on the part of movant).

## II. THE MOTION TO ADOPT SHOULD BE DENIED BECAUSE ORIGINAL DEFENDANTS HAVE ALREADY AMENDED THEIR ANSWER TO THE SAC ONCE AND THEY FAIL TO SHOW GOOD CAUSE FOR AN ADDITIONAL AMENDMENT.

According to Rule 15(a), "[a] party may amend its pleading *once* as a matter of course," and "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." When the deadline to file amended pleadings has passed, "the district court [is] entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) [are] satisfied." *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." In assessing good cause, the Court primarily considers whether the party seeking leave exercised diligence. *See Trustmark Ins. Co. v. General & Cologne Life Re of America*, 424 F.3d 542, 553 (7th Cir. 2005) (finding no good cause when a party sought leave to amend nine months after the deadline had passed).

Courts have an independent interest in protecting the timely resolution of disputes, free from excessive delays. The Seventh Circuit has observed that "[c]ourts have a legitimate interest in ensuring that parties abide by scheduling orders to ensure prompt and orderly litigation." *United States v. 1948 South Martin Luther King Dr.*, 270 F.3d 1102, 1110 (7th Cir. 2001). And Rule 1 instructs that the Federal Rules of Civil Procedure "should be construed, administered, and

employed *by the court and the parties to secure the just, speedy, and inexpensive determination* of every action and proceeding."  In addition to the interests of the parties and the Court, there is a "general overriding public interest in the prompt resolution of legal disputes." *Sapia v. Board of Education of the City of Chicago*, 354 F.Supp.3d 845, 846 (N.D. Ill. 2019).

Defendants cite to Fed. R. Civ. P. 15(a)(2) in contending that "leave to amend" should be "freely given when justice so requires," Mot. ¶ 16.  But justice would be undermined, not served, by granting the Motion to Adopt.  Original Defendants seek to join a new, supplemental pleading on behalf of the Additional Defendants.  By seeking to adopt the proposed answer tendered by the Additional Defendants, which purports to add new affirmative defenses, Original Defendants effectively request leave to amend their Answer almost four full years after they originally filed their first answer and fourteen months following the filing of their Amended SAC on January 12, 2024.  Here, even if this Court finds that this proposed amendment would pose minimal burden on Mr. Washington and his *pro bono* counsel, the burden on the judicial system as a whole can justify a denial of a motion to amend. *See Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992); *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir. 1990) ("The interests of justice go beyond the interests of the parties to the particular suit; delay in resolving a suit may harm other litigants by making them wait longer in the court queue.") (cleaned up).

Moreover, granting the Motion to Adopt—thereby allowing amendment—requires a showing that the affirmative defenses are based on *new* facts, and "[a]mendments are allowed when the new claims become apparent after certain discovery." *Schmeltzer v. Animal Wellness of Monee, LLC*, 2019 WL 13153922, at *1 (N.D. Ill. Jan. 31, 2019).  Original Defendants do not suggest anything new has occurred since they filed their amended answer to the SAC in January 2024 that would permit them to introduce new affirmative defenses.  They cite to no new facts that

have come to light, and identify no new witnesses that have been uncovered. Defendants do not even attempt to explain why they are justified in effectively amending their already-amended Answer to the SAC, and thus fall short of the showing required by Rule 16(b). "Rule 16(b) is intended in part to 'prevent parties from delaying or procrastinating and to keep the case moving toward trial.'" *Abdallah v. FedEx Corp. Services, Inc.*, 2019 WL 4464305, at *4 (N.D. Ill. Sept. 18, 2019) (finding that the moving party fell short of the good cause standard because he did not explain why he did not act sooner).

The *only* change in this litigation occurring between then and now is a change to Defendants' representation. Dkt. 159. But merely substituting counsel is no basis for granting leave to amend. *See, e.g., Ross v. American Red Cross*, 567 Fed. Appx. 296, 306-07 (6th Cir. 2014) ("the substitution of new counsel does not justify failure to comply with a scheduling order."); *Villa v. Chicago*, 924 F.2d 629, 632 (7th Cir. 1991) ("Furthermore no new facts or changes in the law warranted the filing of an amended complaint, other than the fact that Villa was represented by a new attorney."); *Ansam v. Cola Petroleuum, Ltd.*, 760 F.2d 442, 446 (2nd Cir. 1985); *Rhodes v. Amarillo Hospital District*, 654 F.2d 1148, 1154 (5th Cir. 1981) ("The retention of a new attorney able to perceive or draft different or more creative claims from the same set of facts is itself no excuse for the late filing of an amended complaint.").

## III. BECAUSE *HECK V. HUMPHREY* IS INAPPLICABLE TO MR. WASHINGTON'S CLAIMS AS A MATTER OF LAW, AMENDING ORIGINAL DEFENDANTS' ANSWER WOULD BE FUTILE, AND THE JOINT MOTION SHOULD BE DENIED.

With their Joint Motion, Defendants seek to adopt the affirmative defense recognized in *Heck v. Humphrey*, 512 U.S. 477 (1994). Mot. ¶ 2. *Heck* and its progeny bar a prisoner from proceeding with a § 1983 suit if a judgment in his favor would "necessarily imply" that a ruling in a prison disciplinary proceeding affecting the length of the prisoner's sentence had been invalid.

*Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011). A prisoner can remain "agnostic" in his civil rights case about the findings in the disciplinary proceeding; he need not confess to avoid the *Heck* bar. *Id*. Here, regarding the events relevant to the disciplinary action, Mr. Washington seeks to prove that Defendants' conduct in withholding his medication, creating the incendiary conditions under which they used excessive force—and the use of force during his cell extraction itself—was unconstitutional. That does not require Mr. Washington to challenge the outcome of any disciplinary proceeding, nor does it even place his own conduct at issue.[4] For example, the success of Mr. Washington's allegation that he was subjected to excessive use of pepper spray and pepper balls during his cell extraction—*see e.g.*, SAC ¶¶ 65, 73, 93—does not require a factfinder to make any findings as to Mr. Washington's own alleged conduct or as to the outcome of any disciplinary proceedings against Mr. Washington.

Defendants misstate the law when they assert that *Heck* "is valid and applicable here because Mr. Washington lost good conduct credit for disciplinary infractions arising from the same January 23, 2020 incident at issue in this litigation." Mot. ¶ 5. That is an oversimplification: an adverse disciplinary finding and the alleged loss of good conduct credit alone do not bar suits under *Heck*. Mr. Washington does not challenge the outcome of any disciplinary proceedings, nor does the SAC question his loss of good conduct credit. Nor did the disciplinary proceedings even adjudicate the matters at issue here: Defendants' conduct in the lead-up, during, and after the cell extraction. Rather, *Heck*'s application would require that Mr. Washington directly attack the outcome of disciplinary proceedings under Section 1983, which he does not do with the instant

---

[4] Further, to the extent that the Court may find Mr. Washington has not remained "agnostic," and chooses to credit Defendants' assertion that *Heck* is triggered by any of Mr. Washington's allegations, the Court should disregard the portions of the SAC in which Mr. Washington may be understood to "den[y] the [Dixon disciplinary board's] findings." *Moore*, 552 F.3d at 725.

suit. *Moore*, 652 F.3d at 725-26. Instead, Mr. Washington seeks monetary damages to compensate for his physical and psychological injuries brought about by Defendants' failure to abide by the U.S. Constitution and IDOC policy in creating the conditions that led to the cell extraction, the unconstitutionally excessive force used during the cell extraction, and their failure to properly treat Mr. Washington's injuries in its aftermath. *Heck* is thus inapplicable, and the Defendants' requested relief—leave to file and join an amended answer to the SAC raising a defense premised on *Heck*—is thus futile.

## CONCLUSION

For the reasons stated above, Mr. Washington respectfully requests that the Court deny Additional Defendants' Motion for Leave and, accordingly, Original Defendants' Motion to Adopt, grant Mr. Washington's requested relief in the form of discovery sanctions against Defendants, and award such further relief as the Court deems just and appropriate. In the alternative, Mr. Washington requests that the Additional Defendants be limited to pleading only the affirmative defenses already asserted by Original Defendants as a sanction for their failure to timely answer the SAC.

Dated: June 9, 2025

Respectfully submitted,

*/s/ Timothy R. Farrell*

Timothy R. Farrell
Timothy.farrell@ropesgray.com
Kacie J. Brinkman
Kacie.brinkman@ropesgray.com
Francis X. Liesman
Francis.liesman@ropesgray.com
Alex H. DiLalla
Alex.dilalla@ropesgray.com
**ROPES & GRAY LLP**
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5559

*Counsel for Plaintiff Jeremy Washington*