IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Jeremy Washington, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case no. 3:20-cv-50390 |
| ) | |
| v. ) | The Hon. Iain D. Johnston |
| ) | The Hon. Margaret J. Schneider |
| Michael Conley, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION [164] TO FILE ANSWER *INSTANTER*, TO JOIN DEFENSES, AND TO STAY AS TO COLTON LOVE**

In their Motion, the four Additional Defendants[1] ask for relief on two principal grounds.[2] First, to file an answer they neglected to file when it was due 4.5 months ago, given that the case has been litigated as if they filed one anyway—written discovery was responded to, depositions were taken, and no word from Plaintiff or his counsel that a pleading was missing or a default being entertained. Second, that the Defendants should be allowed to plead a purely-legal affirmative defense under the *Heck v. Humphrey*, where at worst, Plaintiff simply has to be agnostic (*i.e.*, refrain from denying the conduct that led to the revocation) about his allegations that he did not do anything warranting prison discipline.

Plaintiff responds arguing this is not excusable because Plaintiff will be prejudiced and any filing of an answer or adding this legal defense will delay the case

---

[1] As a reference, the "Additional Defendants" refers to Emmons, Porter, Wheeler, and Love—all of whom were named in this case in 2023. The "Original Defendants" refers to the tactical-team members—Black, Papke, Marinelli, Martinez, Schlossler, and Conley—all of whom were originally named in Mr. Washington's *pro se* complaint in late 2020.

[2] The third point being a stay of the case as to Colton Love, who is on active military duty. Plaintiff states he does not oppose such a stay.

1

more than it already has been. However, he does not say *how* or *why* a delay would occur; the facts underlying the defense are not in dispute, and does not require any testimony to substantiate other than Plaintiff's undisputed disciplinary record. Aside from vague references to needing more discovery, Plaintiff misses the limited nature of the *Heck* defense.

Plaintiff did not identify or raise the absence of an answer during discovery, which raises the question—what danger of prejudice is there for the Additional Defendants to plead? Although he is correct that Defendants should have filed their answer on time 4.5 months before moving on April 11, the fact remains that this case has been litigated from the start on the merits without reliance on the admissions or denials in the pleadings. Indeed, Plaintiff points to none that he is now surprised to learn of. Given our courts' preference to resolve cases on their merits, Defendants should not be punished for defending the case that way only to find out they should be defaulted because of a filing error that had no impact on the Parties' conduct.

Finally, Plaintiff argues that *Heck v. Humphrey* would be a futile defense to plead in any event because it does not apply to Plaintiff's claims. Plaintiff was disciplined and good-conduct credits (GCC) revoked for his underlying conduct—possession of contraband, disobeying direct orders, and assaulting staff. His operative complaint specifically pleads that he did no such things, therefore giving the Original Defendants—specifically Jordan Black—no cause to use *any* force on him. The Seventh Circuit says that, in cases like these, Plaintiff must simply be agnostic about his conduct, and he cannot dispute that it occurred. *See*, *e.g.*, Roberts v. Jaburek, No. 20-cv-2404, *Minute Entries* at ECF Nos. 111, 115 (N.D. Ill.) (assessing *Heck*

application at trial). To do so would be to put the revocation of the GCC in question, thus implicating habeas.

I. **Additional Defendants' neglect is excusable Other than vague references to more discovery, Plaintiff does not articulate any danger of prejudice to the Additional Defendants answering or the Original Defendants joining that answer—especially where Plaintiff did not rely on the pleadings during discovery.**

As the Supreme Court held in *Pioneer Inv. Srvcs. Co. v. Brunswick Assoc. Ltd. P'Ship*, 507 U.S. 380 (1993), the determination of whether neglect is considered "excusable" is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. Rooted in this equitable exercise is the principle that any alleged prejudice to the non-movant must be "based on the facts in evidence," *In re Processed Egg Products Antitrust Litig.*, 130 F. Supp. 3d 945, 952 (E.D. Pa. 2015), so that a court may decide whether, on balance, the equities would favor the forfeiture of a plaintiff's ability to have its claims heard on the merits.

With these principles in mind, and recognizing that human mistakes occur, the excusable neglect standard is designed to balance the equities and potential harms to prevent a human error from unnecessarily resulting in a forfeiture of rights. *See, e.g.*, *In re Sears, Roebuck and Co. Front-Loading Washer Prods. Liab. Litig.*, 2018 WL 1138541, at *3 (N.D. Ill. Mar. 2, 2018) ("[R]igid and unquestioned adherence to [deadlines] belies principles of equity and the court's role as a fiduciary in class actions when allowing a claimant participation in a settlement works no harm on the conduct of the proceedings and does not significantly prejudice the interests of the

parties."); *In re Hall*, 259 B.R. 680, 682 (Bankr. N.D. Ind. 2001) ("'[I]nadvertence, mistake or carelessness' is not beyond the scope of excusable neglect… To the contrary, it seems to represent the kind of understandable and regrettable human error that often befalls mortals.") (citing *Pioneer*, 507 U.S. at 388).

As Plaintiff correctly states, the following four factors are examined in making this equitable determination: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395. Essentially, the court should ask "under all the facts and circumstances, is it fair to allow the Additional Defendants to plead?" The answer is Yes.

First, Plaintiff will not be prejudiced greatly by the late answer—if at all. He argues that allowing the answer would "cause even further delay" and require him to "return[] to square one in terms of preparing his case in light of Defendants' newly introduced affirmative defenses, and seeking the appropriate discovery necessary to address those defenses," resulting in "costs and delays." (Resp. at 7.) But Plaintiff fails to identify a single piece of evidence or factual matter that would need to be explored through discovery if the defense were allowed. There is no specific danger of prejudice, and Plaintiff describes none. Plaintiff already possesses his full disciplinary history, including the relevant adjustment committee reports, and has known the factual basis for the good-conduct credit revocations since he was disciplined in the spring of 2020.

Moreover, the point of *Heck* is precisely that these underlying facts—because they formed the basis of a valid disciplinary conviction—cannot be relitigated. *Heck* does not invite more discovery; it bars it. Under *Heck*, these issues are off-limits in a § 1983 suit. For instance, if Plaintiff now seeks to depose witnesses or introduce testimony to show that he never threw liquid at staff or that he did not get a fair disciplinary proceeding, that only confirms Defendants' point: he is attempting to challenge the very conduct for which he lost good-conduct credits, and that is the type of collateral attack that must proceed through habeas, not 1983 civil-rights litigation. The *Heck* defense would cabin the case, not expand it—and certainly would not delay it. Plaintiff cannot be prejudiced by a defense that, by its nature, limits—not expands—the factual scope of the case.

From the beginning of this suit, there has been no question that the ten defendants—four Additional Defendants and six Original Defendants—contest Plaintiff's allegations. The parties have actively litigated this case and engaged in discovery about the facts surrounding the incident of January 23, 2020. All of the Defendants have responded to discovery, been deposed, and litigated a defense on the merits that comes as no surprise to Plaintiff, particularly when 95% of the case's facts come directly from the audio and video footage that was captured contemporaneously by handheld camcorder. It should come as no surprise that the Additional Defendants wish to answer and contest Plaintiff's complaint.

Second, the length of delay is not long. True, Defendants should have answered on November 29, 2024, but did not realize their mistake until April 2025

and promptly moved on April 11. But, as explained above, there has never been a mystery about Defendants' positions about the allegations in the complaint.

Third, under *Pioneer*, 507 U.S. at 392, "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect,' it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept.'" This Court may consider *all* relevant circumstances. While Plaintiff certainly had no duty to, he never brought this pleading issue to the Defendants' attention nor moved for default. Considering the parties' obvious litigation positions, Defendants' predecessor's counsel's failure to remember to answer Plaintiff's means that this factor should, at worst, be seen as neutral, not tipping in either party's favor.

Fourth, the Plaintiff argues that Defendants have not acted in good faith, invoking unrelated concerns about prior discovery disputes, predecessor counsel, and even accusations of malfeasance upon the undersigned. Plaintiff may have sound arguments to put to the Court's attention about discovery compliance, but that was before undersigned counsel appeared. It also does not change the ultimate fact that as far as the merits and pleadings, Defendants have maintained consistent factual positions—the underlying conduct of the complaint was, and always has been, denied in good faith without variance. Again, Defendants have actively litigated this case, and as soon as undersigned counsel realized a mistake, he acted to correct that mistake. Indeed, he also has corrected other mistakes promptly upon realizing them, such as Plaintiff's accusation of an "about-face" when counsel recognized that he misrepresented a fact both to counsel and the Court within a week, (Resp. at 10-11),

something he was required to do. Ill. Rs. Prof. Conduct 3.3(a)(1), 4.1(a) (known misrepresentations of fact must be corrected).

As the undersigned recognizes, the duty to correct errors, whether made in court or in communication with counsel, is fundamental to the role of an officer of the court. Upon realizing the mistake regarding the missing answer, counsel acted promptly to correct it. That duty of candor is not just professional but personal. As Lincoln once wrote, "If I have made any assertion not warranted by facts, and it is pointed out to me, I will withdraw it cheerfully." That spirit of candor guides undersigned counsel's approach here. *See also* John G. Nicolay and John Hay, eds., *Complete Works of Lincoln*, 12 vols. (New York: Francis D. Tandy, 1905), 10:149. (July 7, 1864).

In sum, the Court's inquiry into whether Defendants show excusable neglect is "at bottom an equitable one, taking account of all relevant circumstances." *Pioneer*, 507 U.S. at 395. The Court should find that it would be inequitable to deny Defendants the opportunity to answer, given that the parties have actively litigated this case. And considering all the circumstances, the Court should find that it would be inequitable to punish the Additional Defendants for their predecessor counsel's mistake. The Additional Defendants would suffer far more prejudice than Plaintiff if the Court refuses to allow them to file an answer to claims he knows the Additional Defendants dispute. This Court should grant the Additional Defendants' Motion for Leave to Answer, *instanter*.

II. **The Original Defendants should be allowed to join the new answer and assert *Heck v. Humphrey*—which applies because Plaintiff will deny engaging in the conduct that lost his good-**

7

**conduct credit, and a favorable judgment would directly implicate those credits.**

Plaintiff argues two principal points to challenge this motion as to the Original Defendants' request to join the Additional Defendants' proposed answer. First, he argues that the Original Defendants are essentially trying to amend their own answer by joining this new defense, violating Rule 16(b)(4)'s requirement that a scheduling order be modified only for good cause and with the court's consent. Second, he argues that, even if there were good cause, the amendment would be futile because Plaintiff "seeks to prove that Defendants' conduct in withholding his medication, creating the incendiary conditions under which they used excessive force—and the use of force during his cell extraction itself—was unconstitutional." (Resp. at 14.) Plaintiff is incorrect on both.

First, Plaintiff states that the Original Defendants' motion to join the Additional Defendants' answer (which contains *Heck v. Humphrey*) requires a showing of good cause under Rule 16(b)(4) because it implicates a scheduling order. However, Plaintiff does not identify a deadline from a scheduling order that the Original Defendants violate. Because Plaintiff fails to point to any court-ordered deadline for amending the pleadings that our motion violates, Rule 16(b)(4) does not apply. In the absence of a specific scheduling constraint, motions to amend are governed by Rule 15(a)(2), which provides that leave should be freely given when justice so requires.

However, even if Rule 16(b)(4) applies and Defendants missed a scheduling order deadline, Plaintiff's argument that Defendants lack "good cause" under Rule

16(b)(4) rings hollow. Sixteen months after amended pleadings were allowed, Plaintiff moved on August 25, 2023, to file the second amended complaint. (ECF No. 99.) In that instance, Plaintiff added four new defendants—the Additional Defendants—whose identities had been known to him as "Staff Involved" since at least December 2021 on the <u>fourth</u> page of the Report of Investigation produced to him. (*See* Defs.' Resp. to Pl.'s Mot. to File 2d Am. Compl., ECF No. 101.)

The Court granted leave, crediting Plaintiff's claimed justifications that are—now—nearly identical to Defendants'. (ECF No. 107.) The Court found that while Plaintiff may have "technically been in possession of the names and roles of the proposed defendants in December 2021," the Court found that it was not until depositions in April 2023 and subsequent productions in July 2023 that Plaintiff "understood" the relevance of those individuals to his claims. (*Id*. at 3.) In so holding, the Court emphasized that the Rule 16(b)(4) good cause inquiry is fact-driven and turns primarily on diligence—not mere timing—and expressly rejected the argument that Plaintiff's early knowledge of the individuals' names defeated his ability to amend. (*Id*. at 2–3.)

Defendants now stand in precisely the same position: requesting leave based on facts and context that only crystallized after the appearance of more experienced counsel—the undersigned—who recognized that critical Supreme Court precedent had not been previously raised. Just as Plaintiff was given room to refine his claims after the benefit of further discovery and analysis, Defendants now seek a similar opportunity to present a more complete defense. Could Plaintiff have acted sooner? Perhaps. Could Defendants? Perhaps. But both parties have shown diligence.

9

Plaintiff cannot ask the Court to apply a more demanding standard to Defendants than it applied to him—under the same rule, in the same case, based on virtually identical circumstances. Rule 16(b)(4) centers on diligence, not perfection. And fairness demands consistency: if the Court found Plaintiff's explanation sufficient to justify amendment 16 months after the deadline, it should extend the same opportunity to Defendants. The standard does not change based on which side invokes it.

Second, Plaintiff argues that *Heck v. Humphrey* would not apply because he is not challenging the outcome of a disciplinary proceeding, nor does his claim "even place his own conduct at issue." (Resp. at 14.) While Plaintiff argues that his claims do not challenge the disciplinary outcome, his allegations necessarily rely on denying the conduct for which he was disciplined, which is precisely what *Heck* bars. But Plaintiff's Eighth Amendment excessive-force claim necessarily places his conduct at issue, because the constitutional analysis hinges on the "facts and circumstances" confronting the officers at the time. That includes what Plaintiff was doing, what he was saying, and what the officers reasonably believed he had done—including whether he threw a liquid substance at staff, which formed the basis for the "assault on staff" disciplinary conviction and revocation of credits. See *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) ("Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner.").

See also *Moore v. Mahone*, 652 F.3d 722, 723–24 (7th Cir. 2011) (holding that *Heck* barred a prisoner's excessive-force claim where his allegations necessarily implied the invalidity of a disciplinary conviction for assaulting staff; plaintiff's version of events—that he was nonviolent and tackled without provocation—contradicted the disciplinary finding and, if accepted at trial, would undermine the basis for the revocation of good-conduct credits).

A jury cannot assess the officers' conduct without simultaneously considering Plaintiff's—and here, like the prisoner in *Moore*, Plaintiff portrays himself "as a lamb—the victim of a gratuitous, brutal attack." *Moore*, 652 F.3d at 725. But *Heck* precludes him from denying the conduct that resulted in the revocation of his good-conduct credits: assaulting staff, disobeying direct orders, and possessing contraband. He cannot, in his case-in-chief or in rebuttal, offer a narrative that contradicts those disciplinary convictions without necessarily calling their validity into question. That is exactly the sort of collateral attack *Heck* prohibits in a § 1983 action. The defense is therefore viable and should be allowed.

## Conclusion

This case should be resolved based on the facts and law, not technical oversights by predecessor counsel. While the Additional Defendants acknowledge that the answer was not timely filed, the parties have litigated this case on the merits for months, with full discovery and no suggestion from Plaintiff that he relied on the absence of a pleading. There is no meaningful prejudice, and certainly no strategic delay.

Moreover, the proposed answer and the legal defense of *Heck v. Humphrey* are consistent with Defendants' long-standing factual positions and raise no new factual disputes. Permitting amendment at this stage will not disrupt the case, cause prejudice, or require additional discovery. Under Rule 16(b)(4), as applied in this case to Plaintiff's own delayed amendment, the relevant question is diligence—not perfection—and Defendants have acted diligently once the legal basis for this defense became clear to the undersigned. Alternatively, if the Court views Rule 6's excusable-neglect standard as applicable, the equities still weigh strongly in favor of allowing the amendment.

Defendants respectfully request that the Court grant leave to file the proposed answer *instanter*, permit the Original Defendants to join it, and stay proceedings as to Defendant Love.

Date: June 27, 2025

            Respectfully submitted,

            KWAME RAOUL
            Attorney General of Illinois

    By:  */Daniel N. Robbin/*
        Daniel Noah Robbin
        Bar No. 6321386
        Assistant Unit Supervisor, Prisoner Litigation
        Government Representation Division
        Office of the Attorney General
        115 S. La Salle St.
        Chicago, Illinois 60603
        (312) 814-7199
        daniel.robbin@ilag.gov