IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Jeremy Washington, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| | ) | Case no. 3:20-cv-50390 |
| v. | ) ) | The Honorable Michael F. Iasparro |
| | ) | |
| Michael Conley, *et al.*, | ) ) | |
| Defendants. | ) | |

### DEFENDANTS' RESPONSE TO
### PLAINTIFF'S MOTION TO REOPEN DISCOVERY AND COMPEL

This case is now in its fifth year. The Court has already observed that it has gone "far too long"[1] and should be brought to "the finish line."[2] Yet Plaintiff's present motion seeks to reopen written discovery on an issue he has known about since April 2023 but did not pursue until now. The messages at the center of this dispute are brief, informal, post-lawsuit exchanges that reveal no new facts about the January 23, 2020 incident and are consistent with Defendants' longstanding denials.

Additionally, the record shows no bad faith by Defendant Conley—who believed he had sent the messages to counsel in May 2023—or by former AAG Kaur, who, a search confirms, never received them in her Office of Attorney General "OAG" email account. Plaintiff already has the messages and the information needed to make any argument about their significance to the events of January 2020, where the incident is captured entirely on video and audio. His request for additional expansive written discovery is not proportional to the case and risks devolving into collateral disputes about attorney communications and internal OAG processes.

---

[1] Tr. of Proceedings 5:16-20, ECF No. 196 (July 8, 2025).

[2] Tr. of Proceedings 5:10-15, ECF No. 197 (July 22, 2025).

For these reasons, the Court should deny Plaintiff's request to reopen written discovery. The Court should limit any further inquiry to narrow, factual questions for three identified Defendants, and decline to impose sanctions for something that could have been resolved 27 months ago. Sanctions are also unwarranted because Plaintiff's pursuit of this issue is part of his broader, admitted litigation tactic of increasing Defendants' costs, as reflected in his counsel's recorded telephone call with Plaintiff on February 26, 2024. Even if the Court were to find a technical violation, Rule 26(g)(3) limits any sanction to the harm caused, which here could only justify the court reporter costs of the additional depositions Plaintiff seeks, and this would come into play only if the later disclosure of the text messages somehow negatively impacted the Plaintiff's ability to develop his case.

## I. Plaintiff's Background is incomplete.

Plaintiff's recitation of events is largely accurate, but omits key context and leaves an incomplete picture of this five-year-old case. The chronology below is not offered with the intent to unfairly disparage Plaintiff, his counsel, or to litigate old problems for their own sake. It is necessary to correct the one-sided account in Plaintiff's motion, which casts Defendants as dilatory and out-of-bounds, while portraying Plaintiff as blameless, diligent, and pursuing litigation in good faith.

- October 8, 2020: Plaintiff filed his complaint *pro se*.

- October 27, 2021: Plaintiff served a request (*see* Pl.'s Ex. C, ECF No. 194-3 at 9) for "Communications" concerning "the Incident." Video, audio, and photographic recordings of the January 23, 2020, events were produced on or about February 17, 2023.

- April 25, 2023: Michael Conley is deposed, referencing text messages he had with Jordan Black.

- May 12, 2023: Michael Conley attempted to email screenshots of his text messages with Jordan Black to then-AAG Simerdeep Kaur. According to

the OAG IT Bureau, a search recovered approximately 46,000 of AAG Kaur's emails but found no record of the May 12, 2023 message ever existing in her inbox, deleted items, or junk folder. OAG IT also confirmed that there were no spam notifications for that message to her account during the relevant period. While it is theoretically possible that the message was blocked and deleted by the OAG's spam filter *before* reaching her account, there is no evidence that AAG Kaur ever received the email through any channel.

- May 30, 2023: Plaintiff filed a motion to extend discovery. (ECF No. 97.)

    o Plaintiff requested a discovery extension to August 29, 2023. The Court granted that request. (ECF No. 98.). Plaintiff acknowledged that recent depositions had revealed additional documents he believed relevant to his claims (*i.e.*, text messages). Although Plaintiff maintained that his October 2021 request covered these documents, he nevertheless agreed to serve a new, specific written request "that week" to ensure production. Plaintiff served the promised requests seven months later on December 28, 2023.

- August 25, 2023: In a motion, Plaintiff requested an extension of the discovery deadline up to October 30. Plaintiff's motion did not mention the purported outstanding discovery about text messages, nor the status of the discovery request Plaintiff promised to serve in May. (ECF No. 99.)

- October 31, 2023: AAG Simerdeep Kaur resigned from her 14 month tenure with the OAG.

    o Also on October 31, Plaintiff filed an unopposed motion to extend discovery 30 more days, to November 29. (ECF No. 105.) Plaintiff's motion did not mention the alleged outstanding discovery about text messages, nor Plaintiff's anticipated discovery request about them.

- December 28, 2023: Plaintiff served the new request to produce electronic communications, previously promised seven months earlier in Plaintiff's motion of May 30. (Pl.'s Ex. D, ECF No. 194-4.)

- December 29, 2023: The parties filed a joint status report stating that Plaintiff had served discovery requests directed to the new Defendants on December 6, 2023, and planned to issue an additional set of requests to all Defendants concerning issues raised during the original six Defendants' depositions. The report noted that written discovery was ongoing, that all depositions of Plaintiff and the original six Defendants were complete, and that depositions of the four new Defendants would be scheduled after written discovery concluded. The proposed schedule set January 31, 2024 for completion of written discovery and April 1, 2024 for the close of fact discovery. (ECF No. 112.) The Court entered that schedule. (ECF No. 113.)

- o Notably, the report was silent about the May 12, 2023 text message issue, and it did not reflect that Plaintiff had finally served the follow-up discovery request he promised on May 30, 2023, which was ultimately served the day before the joint status report.

- January 31, 2024: Written discovery closed. Plaintiff did not seek an extension, nor file a motion to compel regarding the request for production of text messages.

- February 26, 2024: Plaintiff initiated an unprivileged,[3] recorded telephone call with Plaintiff's counsel, in which counsel states (after being admonished at the beginning of the call that 'This call is subject to recording and monitoring")—admitting that counsel was intentionally planning to burden Defendants' counsel with excessive discovery as a litigation tactic:

  - o "We've got a new guy [Manasseh Konadu] for the AG, too. They have a new lawyer that came in, and so we're talking to him now. We're working across from him, so it's no longer [AAG] Simer [Kaur] who took your deposition. It's a new guy. *We think that he's loaded up with work and isn't particularly interested in or can't really put the amount of time in on this case.* So *we're going to use that to our advantage by loading him up with stuff to do.* Which we're working on now that we've got the new defendants in. It's been tough to get him to reply to stuff, which again, it can be frustrating, but *it's also a good sign as far as we're staying on him.* But hey, we're thinking about you."

- February 29, 2024: The Parties filed a status report. Plaintiff did not acknowledge the missed deadline to complete written discovery—January 31—instead only stating that Defendants "have not yet provided responses or produced responsive documents." (ECF No. 121.)

- March 18, 2024: Defendants served their response to Plaintiff's December 28, 2024, requests for text messages. Defendants objected to the production of such ESI. (Ex. 1, Defs.' Resp. to 3d RFP.)

- April 1, 2024: Plaintiff moved to extend discovery again—to May 1, 2024—citing outstanding responses to his December 28, 2023 "Third RFPs" and asserting that he could not depose the four Additional Defendants until they answered the Second Amended Complaint and produced documents. Plaintiff stated that the Original Defendants served their responses to the Third RFPs—concerning text messages—on March 18, 2024 but had not

---

[3] No attorney-client privilege attached to such calls. *Pursley v. City of Rockford*, No. 18 CV 50040, 2020 U.S. Dist. LEXIS 50513, at *14-16 (N.D. Ill. Mar. 24, 2020) (no privilege attached where prisoner-client had no expectation of privacy with attorney on recorded prison phone line).

Page 4 of 15

produced documents, and that the Additional Defendants had not yet answered or responded to any discovery. (ECF No. 123.)

- o Despite asking for another extension of fact discovery (while written discovery had ended two months before) to May 1, 2024, Plaintiff acknowledged that he did not serve his promised follow-up discovery request until December 28, 2023—seven months after he said he would in May 2023—and the motion did not mention the long-pending text message issue first recognized at Defendant Conley's deposition on April 25, 2023.

- o The Court granted the extension of discovery to May 1, 2024. (ECF No. 124.)

- May 7, 2024: Six days after the May 1, 2024 discovery deadline passed, Plaintiff filed a motion to extend fact discovery by 120 days, to August 29, 2024. (ECF No. 125.) The motion repeated Plaintiff's complaints about outstanding responses and service issues with the Additional Defendants, but it made no mention of the text messages or any other document production from the Original Defendants, despite the Third RFPs having been served in December 2023 only upon the Original Defendants and responses served in March 2024. The Court gave Defendants only until May 8 to respond. (ECF No. 126.) The following day, without any substantive response from Defendants possible under that one-day deadline, the Court granted Plaintiff's request and extended discovery for another four months, to August 28, 2024. (ECF No. 127.)

- July 15, 2024: The parties filed a status report. (ECF No. 136.) Plaintiff again reported that the Original Defendants had served objections to his December 28, 2023 Third RFPs but had "not yet produced responsive documents." Plaintiff further stated that he "anticipates the possible need to extend discovery once more if the Defendants do not produce the outstanding and relevant discovery that Plaintiff has requested of Defendants Black, Conley, Marinelli, Martinez, Papke, and Schlosser." Plaintiff continued to defer resolution of the same document-production issue first identified in April 2023 (15 months earlier) and signaled another extension request beyond the four-month extension he recently obtained.

- August 19, 2024: The parties filed another Joint Status Report (ECF No. 141). Plaintiff again reported that the Original Defendants had served objections to his December 28, 2023 Third RFPs but had "not yet produced responsive documents." Plaintiff forewarned in only this report that he "may have no choice but to seek intervention from the Court" if he does not "receive the discovery he requested."

- September 10, 2024: The parties appeared before the Court, and the Court extended fact discovery to January 17, 2025. (ECF No. 144.)

- November 8, 2024: The Parties filed another status report. (ECF No. 148.) Plaintiff again repeated the same issue as the reports on April 1, May 7, July 15, and August 19. Plaintiff, however, did not write that he would file a motion to compel.

- December 5, 2024: AAG Manasseh Konadu sent six emails—one to each Original Defendant.

- December 20, 2024: The Parties filed another status report. (ECF No. 151.) Plaintiff reported the same information as before, but stated "Plaintiff reserves all rights to seek appropriate relief should [] Defendants not produce documents responsive to Plaintiff's various outstanding discovery requests . . . ." (*Id.* at 3.) The parties requested another extension of discovery, to March 3, 2025. (*Id.*) The Court granted the extension. (ECF No. 152.)

- January 10, 2025: The Original Defendants served another response to Plaintiff's Third RFP, stating that there were no responsive documents in their control.

- January 17, 2025: The parties filed another Joint Status Report (ECF No. 154). Plaintiff acknowledged receipt of Defendants' January 10, 2025 discovery responses and stated that the parties were working to schedule a meet-and-confer "as soon as possible" to discuss Plaintiff's challenges to those responses. By this point, 21 months had passed since Plaintiff first learned of the potential existence of text messages in April 2023, and 12 months had passed since he served his Third RFPs seeking them in December 2023. Yet Plaintiff still had not filed a motion to compel or otherwise sought the Court's intervention to resolve the issue.

- February 28, 2025: AAG Manasseh Konadu resigned from his 1.5 year tenure with the OAG, and undersigned counsel succeeded him.

- From April 25, 2025, through June 5, 2025, undersigned counsel produced screenshots of text messages between four of the Original Defendants. At no point in this 24-plus-month discovery-saga did Plaintiff ever file a motion to compel or explicitly seek the Court's intervention under Rule 37, despite knowing there could be missing responsive materials since April 2023.

II.  **Argument**

This record shows that Plaintiff's motion is less about pursuing discovery in good faith and more about continuing a case the Court has already said has gone on far too long. First, no further discovery is warranted because Plaintiff has delayed

this very issue for nearly two years, repeatedly deferring its resolution without ever filing a motion to compel, and because any evidence of alleged discovery violations is already known. Plaintiff now speculates that other materials must exist, but the only communications at issue are innocuous, post-lawsuit exchanges that are consistent with Defendants' long-standing denials.

Second, even if the Court were inclined to permit some discovery, it should be strictly limited to the three Defendants against whom further depositions are sought—Schlosser, Conley, and Black—and confined to narrow factual questions about what they *personally* did or did not do, and when—not what their attorneys told them or what the OAG's processes are in communicating with its clients.

Finally, sanctions are not warranted: Defendants are laypeople who sincerely believed that their private messages were not relevant to this case, and those messages align with their sworn positions. Further, predecessor counsel at worst performed an imperfect inquiry into the existence of material text messages, not a bad faith one. Even so, at most, Rule 26(g) limits any sanction to the specific prejudice "caused by the violation," meaning any remedy should be tied only to the January 2025 response, and Plaintiff's decision to postpone this issue by more than 24 months should not be rewarded with a fee award.

### A. Further written discovery is not warranted because it will delay adjudication further in this 2020 case.

Defendants do not oppose Plaintiff re-deposing Defendants Schlossler, Black, and Conley. However, no additional written discovery is warranted because Plaintiff waited over 24 months to bring this supposedly highly-prejudicial issue to the Court's attention, a kind of delay the Court of Appeals has said should not be allowed.

In *Rossetto et al. v. Pabst Brewing Co.*, the Seventh Circuit held that the district court did not abuse its discretion when it denied a discovery motion that was filed two months after the discovery deadline. 217 F.3d 539, 542 (7th Cir. 2000). The Court found that the plaintiffs' position had "no possible merit" because "plaintiffs gave (and give) no excuse for their tardiness," calling the district court's order a "welcome effort to expedite the litigation and spare the parties the expense of protracted discovery, the bane of modern litigation." *Id.*

In the context of "discovery on discovery," "[w]hen it appears that a party's request for discovery on discovery is a fishing expedition, it will not be allowed, and speculation of wrongdoing is not enough to warrant such discovery." *Xcoal Energy & Res. v. Acciaierie D'Italia S.P.A.*, No. 1:23-cv-361-TFM-C, 2025 U.S. Dist. LEXIS 144362, at *10 (S.D. Ala. June 13, 2025) (cleaned up). The Court must also "closely scrutinize the request in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum*." *Williams v. NYC Bd. of Elections*, No. 23-CV-5460 (AS) (KHP), 2024 U.S. Dist. LEXIS 135666, at *12 (S.D.N.Y. July 29, 2024) (cleaned up). Such discovery is still subject to the ordinary constraints of Rule 26(b)(1)'s proportionality, and whether there is a showing of diligence under Rule 16(b)(4) to justify modifying the scheduling order. *Id.* (proportionality required); *McCann v. Cullinan*, No. 11 CV 50125, 2015 U.S. Dist. LEXIS 91362, at *29 (N.D. Ill. July 14, 2015) (Johnston, J.) (Rule 16(b)(4)'s 'good cause' "focuses on [the movant's] diligence," and is "more onerous than Rule 6(b)(1)(B)'s 'excusable neglect' requirement").

Here, Plaintiff may, in the abstract, have made a *prima facie* showing that might justify "discovery-on-discovery" in a *different case*. But he has not shown the diligence required to modify the Court's scheduling order to that extent *in this case*

under Rule 16(b)(4). Notably, the cases Plaintiff cites for the proposition that such discovery is a necessary evil are distinguishable. Instead, they concern disputes between sophisticated commercial parties, discovery violations discovered on the eve of trial, or large commercial law firms that had formal ESI protocols in place for themselves and their employees but failed to follow them, and the failure to follow them led directly to the heart of the underlying claims.[4]

By contrast, this is a § 1983 action concerning a single cell extraction lasting approximately an hour. The *entire incident* was recorded on handheld camcorder.[5] The alleged excessive force and alleged medical indifference occurred during this discrete, fully documented event. The post-lawsuit, non-contemporaneous messages at issue (which have been shared with the Court *in camera*) were exchanged more than a year after the January 23, 2020, incident and consist of brief, informal remarks among the four Defendants reacting to the fact of being sued. They are consistent with the Defendants' yearslong denials of wrongdoing, reveal no new facts, and bear no relevance to supporting Mr. Washington's underlying claims other than this—they believe they have been wrongly accused.

---

[4] *E.g.*, *SmokingDR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 869 (N.D. Ill. 2021) ( "eight-figure [trademark] case" ); *Colyer v. City of Chi.*, No. 12 C 04855, 2016 U.S. Dist. LEXIS 40, at *2 (N.D. Ill. Jan. 4, 2016) (failure to produce integral audio of pre-incident dispatcher audio until day of trial, where audio was central to officer credibility); *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2017 U.S. Dist. LEXIS 124459 (N.D. Ill. Aug. 7, 2017) (costs and fees awarded for court reporter of a 30(b)(6) deposition in "large, complex, multi-party [antitrust] case"); *Urban v. United States*, No. 03-cv-6630 (N.D. Ill. July 14, 2006) (issues included whether the plaintiff signed a Form 2750 tax form, if plaintiff exercised control over a corporation, and if plaintiff knew that corporation failed to pay taxes during certain years); *Promier Prods., Inc. v. Orion Cap., LLC*, No. 21-cv-1094, 2023 U.S. Dist. LEXIS 230500 (N.D. Ill. Aug. 30, 2023) (dispute over plaintiff's classification of distributions it made to two companies controlled by plaintiff's COO and its CEO).

[5] The only portion of the incident not visible on video is the unclothed search conducted after the cell extraction and escort to Plaintiff's new cell. During that brief interval, the camera operated by Defendant Marinelli was turned to the side to protect Plaintiff's privacy, but the audio remained clear. Plaintiff testified at his deposition that the manner of the search — conducted after he stated he was suicidal, which required ensuring no foreign objects remained in the cell — including moving his body parts aside for only a few seconds at a time, was consistent with penological practice.

Here, Plaintiff has offered no reason for his delay, nor why he believes that further discovery is proportional to what the text messages reveal. Granting his request would only prolong the very protracted discovery that *Rossetto* and Rule 1 caution against.

### B. Even if further discovery were warranted, it should be limited.

If the Court concludes that some written discovery may proceed, the scope should be tightly confined to what each Defendant personally did, saw, or understood—not to what their attorneys, the OAG, or other third parties did in managing the litigation. As noted above, the Rules of Civil Procedure require that discovery be "proportional to the needs of the case" and avoid needless intrusion into privileged or irrelevant matter. Fed. R. Civ. P. 26(b)(1). This Court should also narrow Plaintiff's "discovery-on-discovery" requests to prevent them from becoming an unfocused "fishing expedition" into litigation conduct rather than the underlying facts of the case.

The only potential factual dispute here is whether the recently produced text messages represent the entirety of such communications. Plaintiff already possesses the messages themselves, along with the surrounding information necessary to pursue any argument that discovery violations occurred. The content is limited to informal, post-lawsuit reactions to being sued and contains no new contemporaneous facts about the January 23, 2020 incident. Plaintiff therefore does not need broad written discovery into attorney communications or OAG processes—such an inquiry would not uncover additional admissible evidence on the § 1983 claims and would instead devolve into collateral disputes over litigation conduct, privilege, and work product.

If written discovery proceeds at all, it should be limited to targeted interrogatories or requests for admission asking only Defendants Schlossler, Conley, and Black to identify: (1) whether they sent or received text messages about the January 23, 2020 incident; (2) the approximate dates and recipients of those messages; and (3) whether they retained or deleted any such messages other than those already produced. Anything beyond that risks transforming this into a dispute about the OAG's internal communications rather than whether Defendants used excessive force or were deliberately indifferent to Plaintiff's medical needs during a discrete, video and audio-taped incident five years ago.

### C. Sanctions are inappropriate where Plaintiff waited over a year to pursue the issue.

Rule 26(g) requires counsel and parties to certify that discovery responses are made after a reasonable inquiry and are consistent with the Rules. Sanctions under Rule 26(g)(3) are limited to the harm "caused by the violation." Additionally, Rule 1 requires that Rule 26 be construed to allow substantial justice to be done in a manner that expedites cost-effective litigation.

Here, the record here does not support any finding of a Rule 26(g) violation not only because of Plaintiff's failure to be diligent, but also because the text messages at issue are purely collateral to the case. The January 10, 2025 discovery response to Plaintiff's Third RFP accurately reflected Defendants' knowledge at that time concerning any responsive, substantive messages about the January 23, 2020 incident—not casual remarks expressing their belief that the lawsuit lacked merit. As laypersons, Defendants reasonably believed that their informal, post-lawsuit text exchanges were not relevant to the claims or defenses in this case. Once those messages were located, they were produced.

Even if the Court found a technical deficiency, Rule 26(g) does not contemplate sanctions untethered to actual prejudice or the underlying circumstances. *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357 (D. Md. 2008) (citing the Advisory Committee's Notes, "Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37.") The messages themselves are short, after-the-fact remarks expressing surprise at being sued and unsurprising distaste at Mr. Washington's decision to file suit. They are consistent with Defendants' longstanding denials of wrongdoing and do not reveal new facts about the January 23, 2020 incident. Plaintiff cannot show that their late production impaired his ability to prove his case.

Plaintiff's sanctions request is also consistent with the cost-escalation strategy his counsel candidly described in a recorded February 26, 2024 telephone call with Plaintiff: to "use [a new attorney's workload] to our advantage by loading him up with stuff to do." That admission of intent to increase defense costs mirrors the very conduct Plaintiff accuses Defendants of in prior filings, where he repeatedly claims they engaged in "foot-dragging," missed deadlines, obfuscation, and a pattern of "discovery misconduct." (See Pl.'s Filings, *passim*, ECF Nos. 179, 194.)

The inconsistency is striking. While publicly casting himself as the victim of delay, Plaintiff has privately embraced a deliberate effort to prolong proceedings and increase litigation expense, as reflected in his counsel's February 26, 2024 call about "loading [Defendants' counsel] up with stuff to do."

Defendants do not dispute that the January 10, 2025 response—prepared by then-counsel AAG Manasseh Konadu—stated that no responsive materials were within Defendants' possession, custody, or control. That statement was accurate as to Defendants Marinelli and Martinez Sr., but later proved incomplete with respect

to Defendants Schlossler, Black, Conley, and Papke.[6] After undersigned counsel, a more seasoned attorney, conferred with the clients months later, four of ten total Defendants recalled informal, post-lawsuit text exchanges. Any shortcoming in the earlier response reflects an imperfect inquiry by a relatively new attorney and at worst a misunderstanding of relevance, not an intent to conceal. Once the messages were located, they were produced.

By contrast, Plaintiff has known since April 2023 that such messages might exist, but waited until 27 months later to raise his concerns with the Court. That extended delay—despite numerous status reports and opportunities to seek relief—undermines any claim of prejudice and weighs heavily against the proportionality of sanctions. Rule 26(g)(3) limits any sanction to the harm caused by the violation, and here Plaintiff's own inaction is the proximate cause of any prejudice he asserts.

Further, no sanctions are warranted because the record shows no bad faith by either Defendant Conley or former AAG Kaur. Defendant Conley believed he had sent the May 12, 2023 email with attached screenshots, and there is no evidence to suggest otherwise. Likewise, a search by the OAG IT Bureau recovered approximately 46,000 of AAG Kaur's emails but found no record of the message in her inbox, deleted items, or junk folder. The IT Bureau also confirmed that Kaur received no spam notifications during the relevant period. While it is theoretically possible that the email was blocked and deleted by the OAG's spam filter before reaching her account, there is no evidence that AAG Kaur's OAG account ever actually received it. Without proof that the email was ever in her possession, there is no factual basis to infer intentional nonproduction or discovery misconduct warranting sanctions.

---

[6] Plaintiff's motion does not seek the second deposition of Papke.

### D. Even if sanctions were warranted, they should be limited.

Rule 26(g)(3) limits sanctions to the harm "caused by the violation." Here, the only expense plausibly tied to the timing of production is the cost of re-deposing Defendants Schlossler, Black, and Conley. Any broader award—such as attorney's fees—would effectively reward Plaintiff's improper approach to this case. At most, any sanction should be limited to the court reporter costs for those depositions.

### III. Conclusion

Defendants acknowledge that their discovery efforts could have been more efficient. But Plaintiff's approach the past four years has been no better. As the master of his own case, Plaintiff has known of the text message issue since April 2023, promised to address it in May 2023, delayed serving follow-up requests until December 28, 2023, and then allowed 540 days to pass before filing the present motion. Under Rule 16(b)(4), the diligence of the movant controls whether the Court should modify the scheduling order—like reopening discovery. Plaintiff's inaction defeats any claim of good cause and confirms that "discovery-on-discovery" and sanctions are unwarranted. Indeed, this is reinforced by Plaintiff's counsel's candid admission during a February 26, 2024 call that their strategy was to "load [Defendants' counsel] up with stuff to do" to exploit perceived workload pressures. The motion must be denied, except as perhaps to the depositions of Schlossler, Conley, and Black.

Date: August 19, 2025

                        Respectfully submitted,

                        KWAME RAOUL
                        Attorney General of Illinois

By:    */Daniel N. Robbin/*
        Daniel Noah Robbin
        Bar No. 6321386
        Assistant Unit Supervisor, Prisoner Litigation
        Government Representation Division
        Office of the Attorney General
        115 S. La Salle St.
        Chicago, Illinois 60603
        (312) 814-7199
        daniel.robbin@ilag.gov